Elizabeth Masakin appearing on behalf of Joaquin Hernandez-Navarro. If it pleases the court, I'd like to reserve a few minutes for a possible rebuttal. The issue presented in this appeal is somewhat similar to in terms of attacking the underlying immigration proceeding. The issue here is whether the deportation hearing in 1995 rendered the process so fundamentally unfair that there was a violation of due process. As counsel argued at the time of the hearing on the motion to dismiss, there was the appearance of due process but not in fact due process. And I would present to this court that there wasn't even the appearance of due process at this hearing. And that was because of a number of defects, a number of problems relating almost entirely but somewhat different to the issue of counsel. There is no question that in an immigration proceeding, there is the right to counsel. There is not is the right to appointment of counsel. I would like to be able to convince this court that that right should exist. But case law completely is contrary to what I would want to present to this court. Then the question is if a person can't afford to retain counsel and a person elects for whatever reason to represent himself or herself, are there any advisals, are there any kinds of cautionary comments that the immigration judge should make? You know, in misdemeanor proceedings where a person faces in many instances and certainly in this instance, in misdemeanor proceedings, we have counseling by the judge. Here's what happens if you represent yourself. In federal court, clearly, United States versus Forrester, we have requirements that the defendant be told possible consequences of representing himself, basically what a bad decision it is. In immigration proceedings, there is no such obligation imposed on the court, and there should be, because there is in an immigration proceeding certainly a far greater consequence, a far greater detriment in terms of loss of homeland in this particular case. Let me ask you, are you asking us to create a rule that says that there must be that type of a statement made by the immigration judge? I think there should be a rule that says that. I don't think there should be, but I'm asking you, what are you asking from us? I'm asking from you to find that there should be in the case where someone elects to represent himself or herself in an immigration proceeding, that there should be an advisal of the consequences of representing yourself. Where does that requirement come from? Well, I think the requirement comes from the Sixth Amendment and the Fifth Amendment, the right to a fair trial, the right to a fair proceeding, the right to due process. Okay. You think it comes out of the due process? Yes. Yes, I think it does. So in this particular Is this a novel suggestion or has it ever been proposed? I don't know that it has ever been proposed before, Your Honor. What I don't think it's novel because it is certainly something that we do in criminal cases where the consequences would be in many cases far less onerous than the consequences in an immigration proceeding. Did the immigration judge advise him that he had a right to have an attorney? Absolutely. He advised him that he had a right. He advised him that there are some organizations that provide that right. Okay. There's no question that he was advised that he had the right to an attorney. The question is whether he was advised as the consequences of representing himself. And the problem in this particular case was the consequences of representing himself were far-reaching. For example, he was never advised that he had the right to not incriminate himself. He was never advised that there was no question that he was going to testify. He was just called and told to testify. Not only was he cross-examined by the immigration officer, the immigration attorney, then the questioning by the court in areas that far exceeded and really implicated Fifth Amendment rights was I asked him how he supported himself. He said he sold narcotics when he needed money. Well, it went further than that. I don't think even Mr. Sterling's attorney would have advised him to say that kind of thing. Well, I think a good attorney would have. No, I said would have advised him to say that. Oh, no, exactly. Exactly. But it went a lot further than that. It went into then the questioning was how many times and how often did you sell the cocaine? How much cocaine would you sell? Well, there is no doubt that he would have done better. He might not have prevailed, but he would have had a happier experience. And the problem was it was not only a happier experience. The issue is can a court state, declare that there is a right under the due process clause to an advisement by the judge as to the consequences when you know there is not even a duty to provide counsel. But that's the – I'm trying to find out whether there was any authority that you have to cite on this issue. I do not. Anything that indicates the due process clause extends that far in immigration proceedings. But it should. It should because of the laws. A lot of things should. Well, I understand that, but – I understand how to improve our judicial system in a lot of ways. Well, I think that it's more than just approving the judicial system, Your Honor. I think that – No, this is improving the immigration system. If you've got a lot of time, I can tell you about that. I think that, you know, when you're talking about the right to counsel, to right to appointed counsel when you're facing a drunk driving or a driving under a suspended license. There is no right to appointed counsel in immigration proceedings. I understand that. There are. I understand that. And I'm not telling you that our position – Well, you've got to have more rights in a – when you face a $100 fine for a misdemeanor, you have more rights than you do in an immigration case. And that is simply unfair. It is simply unfair, but that's not our job to do. Well, I think it is. It's not fair to do law. I think it is. I think it is unfair because I think you're talking about due process and you're talking about Fifth and Sixth Amendment right. And that is, I believe, within your purview. But it's not only the issue of appointment of counsel. It's the issue of the conduct of this immigration judge and the conduct of this hearing, which certainly would have been different had this particular defendant been advised, number one, that he had a right to not testify, to not answer the questions, some of the questions. This hearing got so far afield that there was substantial testimony that he had been involved in a murder. And then one line in this agent says, well, I did talk to the people in the San Francisco Police Department, and they said he wasn't involved in the murder. The pre-sentence report says he was involved in a murder. So I think that the issue is not just – and I'm going to close so that I can have a few minutes. The issue is not just the issue of what is the immigration judge's obligation. The issue is how far afield can an immigration hearing go before it is truly rendered fundamentally unfair and a violation of due process. And I think that's where this hearing went. Thank you. Thank you. Good morning. May it please the Court, Mark Rahe for the United States. Your Honors, this was not a fundamentally unfair deportation hearing. What my opponent would ask this Court to do is to go against not a couple years, but decades' worth of authority that has squarely held that individuals in removal proceedings are not afforded the same constitutional rights as defendants in criminal actions. And instead, when we look to the law as it exists, the I.J. here followed the mandates of the law, and then I would actually suggest went even far above them, as opposed to taking this removal hearing far afield. And by that, let's look at the right to counsel. As the record indicates, the I.J. gave a thorough advisal to the entire group present shortly before he spoke with Mr. Hernandez-Navarro. And during that advisal, he said, you have a right to an attorney. There's a list of free lawyers in front of you. I want to make sure you all have that list. And that same free list was also served upon the defendant when the order to show cause was served on him. And the I.J. specifically said, you do not have to complete your hearing today. If you wish, you may come back on another day. You may use the time to try to find a lawyer or to prepare your case. And that's page 64 of the supplemental excerpts of record. And then when Mr. Hernandez-Navarro appeared for his ---- How many people were given this advisement at one time? That I don't know, Your Honor, as far as the total number. I mean, 100, 200? I don't know. I've never seen a removal hearing that has that many. I mean, maybe 10, 15 possibly at most, but this record doesn't indicate how many. But once Mr. Hernandez-Navarro was actually in front of the immigration judge, he asked very simply, Joaquin Hernandez, do you wish to have your hearing today? Yes. Do you wish to represent yourself? Yes. And as this Court stated in the B.W.A. case, that I.J. is not required to undertake Herculean efforts towards the right of counsel. And in this case, you have the advisals, the group advisal, and then the direct colloquy between the I.J. and the alien. Now, beyond that, what this case is really about is relief, 212C. And I think one thing that doesn't come through in my opponent's paper is this is something, this is a benefit for the alien. And as such, the alien has the burden of proof. I mean, where would I be if I came up here and tried to argue to you, you know what, here's an alien facing this severe consequence, this is his one avenue of relief, and we want to make sure we tell him he doesn't have to say anything. That would be directly contrary to his burden of proof. On a silent record, he doesn't get relief. He has to approach or broach various topics. And there was no question that he had been convicted of a felony drug conviction, possession of cocaine. He needs to prove that he's been rehabilitated. That's one of the factors. When you look to the 212C, I know my opponent makes it sound like, wow, this was sort of an inquisitorial hearing. It's the very nature of 212C that you examine a wide range of circumstances. As the I.J. told Mr. Hernandez-Navarro, my job is to balance the good against the bad. You have to prove a number of things. In fact, at excerpt of record page 75 to 76, the I.J. says, I want to make absolutely sure you understand what you're going to need to prove, and that was before the 212C hearing. You have to prove if you have family ties, whether you support them, your job history, all these kinds of things. And really, when one looks to it, even if you assume that there was a violation as far as the advisal of the right to counsel, where is the prejudice here? Yeah, if he had an attorney, maybe the attorney might have objected to certain questions, but it also bears noting that the rules of evidence don't even apply in removal hearings. It's definitely a lot broader range of evidence that's admitted. But when you look and when you get right down to it, I think the two things that this defendant had for him at the time were 15 years of residence and his youth. And really, it's just the residence that's the serious, you know, that is an enumerated factor under 212C. But when you look to all the other things, he had no wife, had no children. He had a mother, brother, and sister as to whom he testified that he didn't get along with anymore. In fact, he didn't even tell them about the removal hearing or have them come to testify on his behalf. When you look at the application under the work history, he literally wrote the word none. He had dropped out of high school in the ninth grade at age 15. This removal hearing occurred six years later when he was 21. And in those six years, he didn't have a single job to speak of. In fact, when he was asked at the outset, you know, do you have any jobs, he said, no, just lazy. I would submit to this court, even if he had an attorney, and incidentally, the defendant never filed an affidavit in support of his motion to dismiss in this case. So he never said anything to the effect of, you know what, I had an attorney in mind. If I would have been told a few more things, I would have gotten that attorney. But let's just assume that he would have actually exercised his right to counsel. What could that counsel possibly have done that would indicate a showing of prejudice in this case? And there's really two ways to look at that prejudice inquiry. I call it an affirmative and a negative. Under the affirmative side, are there any facts that were not brought forth during this removal hearing that somehow a lawyer would have brought forth? I would submit to this court the record doesn't show a single such fact, and it's the defense that has the burden of proof on prejudice. Not once in the course of this litigation do you ever see any kind of argument, you know what, if I had had an attorney, I could have told him about this certain job that I had, or that, you know, taking care of somebody with an illness. Nothing to that effect. So there's not a single fact that wasn't presented to the I.J. that an attorney somehow would have done. I think you've made a pretty full argument already. Oh, did I? I said I think you have made a fairly full and complete argument by now. Well, I will, unless the Court has any further questions, then I will submit. All right. Thank you. What was his sentence again? It's fresh in my memory. His sentence, I believe, was 24 months. 24 months. Yeah. Which is also the same sentence he got on count two, which is not even at issue in this appeal. But, yeah, he got 24 months. Where is he now? Oh, that I don't know. I would assume he might. Has he been released? Non-parole or probation? Yeah, he's been released. And my opponent, I appreciate that, has clarified that he's been released from custody.  Yeah, I see it here. Got it. Thank you, Your Honors. Okay. Thank you. Well, as much as I hate to get up after judges to the opposition, I think you've made a full argument. I will. I'll just say he was he had an underlying supervised release violation for which he got eight months, and he was released from custody on November, I think it was, 23rd of that year. And he is not in the Bureau of Prisons or in INS custody. So my presumption is that he was deported. There was an underlying Well, you don't even know where he is. I don't. I'm assuming he was deported. There was a Anders brief that I filed. I was appointed to represent him on the underlying supervised release violation. I filed the Anders brief because he had been released from custody on the violation, and so there was no viable basis for the brief. I do not know where he is now, but I know where his family is. I just wanted to say just two very quick things. One is that in terms of the advisals that Mr. Regan talks about, there was never any advisal regarding Fifth Amendment privilege. And in terms of Herculean, what is described as Herculean efforts, we have all watched judges with pro se defendants tell them what the consequences are of representing themselves. These are not Herculean. They generally take two to three minutes. And for that short period of time to guarantee or at least to support the notion of due process in these hearings, I think that should have been done and should be done in immigration proceedings. With that, I thank you, Your Honors. Thank you. Thank you. This matter is also submitted.
judges: Pregerson, Reinhardt, Nguyen